[No. C024944. Third Dist. Sept. 22, 1997.]

SANDRA LEE TREND, Plaintiff and Respondent, v.
ALLEN EDEN BELL, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Peter A. Sapunor for Defendant and Appellant.

Farmer & Murphy and Gerald C. Hicks for Plaintiff and Respondent.

**OPINION**

**MORRISON, J.**—Allen Eden Bell appeals from an order after hearing awarding Sandra Lee Trend child support arrearages. We shall affirm.

### I.

The parties married in 1964, had a child in 1967 and divorced in October 1970, in Montana. The Montana decree awarded Trend $50 per month in

child support. On August 21, 1995, the Sacramento County District Attorney registered the decree. On September 22, 1995, Trend filed a declaration stating that she wanted the district attorney to enforce the decree and direct that Bell pay future sums to the district attorney.

Bell filed a motion to vacate the registration of the foreign support order. His "supporting affidavit" claims Trend concealed the child. He asserted the Montana order was unenforceable "because of age" and Trend was estopped to pursue support. Bell contended that under Family Code section 4820 the law of Montana applied and that Montana has a 10-year limitations period. (Further unspecified references are to this code.)

On November 27, 1995, Trend filed a declaration requesting vacation of her earlier declaration regarding having the district attorney enforce the support order. She claimed she had served a "notice of rescission" on the district attorney in July 1995. When the district attorney refused to recognize the rescission, Trend filed a separate lawsuit against Bell. Trend's actions stem from her belief that the government assistance she had received over time was for other children, not Bell's child, therefore the district attorney's intention to apply any recovery from Bell toward the assistance she had received was improper.

On the same day her lawsuit was filed, a hearing was held on Bell's motion to vacate the registration of the Montana order. The district attorney repeatedly asserted the motion was untimely. (§ 4853, subd. (b).) Trend testified she did not conceal the child. Bell presented no evidence, but stated "I would like to pass this over and talk to the D.A. and find out. I don't know what's going on for sure." Ultimately, the trial court ruled the motion was untimely and there was no evidence of concealment. The court stated that "my determination on the concealment is based in large part on the declaration that you [Bell] filed with your motion. Because what the law requires is that you exert reasonable efforts to—to find the child." Issues of arrearages, statute of limitations and estoppel against the district attorney's office (based on bureaucratic mistakes) remained open. A wage assignment order followed.

Bell moved for reconsideration. With his motion he included a declaration setting forth further facts regarding his efforts to find the child. He further claimed that he had been cut off during the hearing and not allowed to present evidence relating to concealment. Trend opposed reconsideration on the grounds that the "facts," if any, could have been presented at the hearing. Bell asked for a "long cause hearing . . . on the issue of concealment."

The matter came on for hearing on February 1, 1996. Bell asserted that he had been deprived of a hearing on concealment. Mention was made of

affidavits given to Bell at the prior hearing, which Bell admitted receiving "when I walked in the courtroom. [But] I did not know what was going on." The district attorney urged that Bell had had the opportunity to present evidence: "Last hearing he did not request to talk. He had the opportunity to speak when court was in session."

The court reversed its finding that Bell's motion to vacate the registration was untimely. The court denied the motion to vacate, but expressly left open a determination of the amount due. The trial court refused to disturb its finding of no concealment, reiterating that Bell had not tried "hard enough to find your child."

On February 15, 1996, the district attorney filed a document captioned "re-assignment" which states the interest in the action is assigned back to Trend and the district attorney will not accept payments in the matter. It seeks guidance, in the nature of an interpleader, as to disposition of funds held.

On the same date, the court filed an "Order After Hearing" which formally denied the motion to vacate the foreign support order and the motion to reconsider, recites the finding of no concealment, orders a wage assignment of $100 per month on arrearages and states "The Court makes no determination as to the amounts of arrears/reimbursement." The order was entered as a judgment and there is a clerk's certificate of mailing, all dated February 15, 1996.

On March 19, 1996, an employee of the district attorney's office (Price, who is not an attorney) filed a declaration and order for termination of the wage assignment order. The declaration recites the legal conclusion that "the Bureau of Family Support has no legal right to collect child support" in this case. The trial court signed the order.

On April 10, 1996, Trend moved to "amend" the judgment pursuant to Code of Civil Procedure section 473. Trend sought to "amend the extant judgment," a reference to the attempt to enter the Montana decree as an enforceable sister-state judgment, or "set the amount of the judgment entered on February 15, 1996 in the amount of $22,842.79."

On April 12, 1996, Bell moved to dismiss the case "with prejudice" and sought return of moneys paid. He sought a ruling on the existence of any arrears "because of Montana's law re statute of limitations on judgment enforcement[.]" In opposition, Trend attacked the accuracy and effect of the

Price declaration. Trend's opposition and Bell's reply quarreled about Montana law.

These matters came on for a hearing on May 2, 1996. The district attorney disavowed the Price declaration. Trend argued the Montana statute of limitations was tolled because Bell had left that state. Bell argued that under Montana law the judgments for child support were limited to 10 years from emancipation of the child, which occurred in 1985 when the child entered the United States Navy.

The court issued an order after hearing on May 13, 1996, as follows: (1) Trend's attempt to use the sister-state registration procedures was improper and that portion of the consolidated action was dismissed. (2) The Montana decree provided for $50 of support from December 1979 through February 1985, when the child was emancipated. (3) The Montana statute of limitations on judgments is 10 years from termination of the obligation (here, February 1985) "so this judgment, although not void, is not enforceable in Montana." (4) However, Bell is a California resident and California law provides child support is due until paid. Under federal choice-of-law rules codified in the Full Faith and Credit for Child Support Orders Act (28 U.S.C.A. § 1738B(g)), the longer possible statute of limitation applies. (5) Arrearages were calculated at $8,300 principal and $13,988.62 interest. A formal order was to be prepared by the district attorney, but was not.

On May 28, 1996, Bell moved for reconsideration, alleging he was not a California resident when support was due. On July 1, 1996, at another hearing, when Bell began straying into the concealment issue, the court informed him that he could not bring it up again and "I think even your time to—to appeal that has—has expired." The court stated it would apply California law and denied Bell's motion. The order after hearing filed August 6, 1996, confirms the amount through March 3, 1996, and acknowledges the district attorney's assignment of rights back to Trend. Bell filed a notice of appeal on October 3, 1996, specifying the last order as that from which the appeal is taken.

## II.

Section 4502 provides: "Notwithstanding any other provision of law, a judgment for child, family, or spousal support, including a judgment for reimbursement or other arrearages, is exempt from any requirement that judgments be renewed. A judgment for child, family, or spousal support, including all lawful interest and penalties computed thereon, is enforceable until paid in full." (Stats. 1993, ch. 219, § 143.)

■ Bell's principal contention is that the trial court erroneously applied section 4502 retroactively. In his view, because the right to collect was already barred when the statute was passed, the statute should not be construed to "revive" the claim. (*Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 468 [183 P.2d 10]; see *Gallo* v. *Superior Court* (1988) 200 Cal.App.3d 1375, 1378-1379 [246 Cal.Rptr. 587] [law unsettled whether Legislature *may* revive time-barred claims, statutes construed to apply prospectively].)

Trend contends Bell did not raise this issue in the trial court. Not so. Bell consistently claimed the Montana support order was unenforceably stale. The Montana support order provided for monthly payments from 1970 until February 1985. Bell maintains that under Montana law, each payment became a judgment when due and became unenforceable upon the expiration of the 10-year Montana statute of limitations. "The Federal Full Faith and Credit for Child Support Orders Act wasn't signed into law until October [22], 1994, and that statute does not provide for retroactive effect. (28 U.S.C. § 1738B.) Accordingly, by the date of enactment, only five of respondent Trend's installment judgment claims had not already expired - those for October of 1984 through February of 1985." Bell reasons a similar result obtains by application of section 4502 and its predecessors.

The federal law did not revive anything, it merely altered choice of law rules. Here, the trial court was faced with a foreign support order. "Once a foreign support order is registered, it must be treated in the same manner as a local support order." (8 Witkin, Cal. Procedure (4th ed. 1997) Enforcement of Judgment, § 396(d), p. 395.) Here, the determination of arrearages occurred after denial of the motion to vacate the registration of the Montana order. In any event, assuming a "true" conflict of laws, the trial court was obliged to follow the new federal choice of law statute which provides: "(1) . . . In a proceeding to establish, modify, or enforce a child support order, the forum State's law shall apply except as provided in paragraphs (2) and (3). [¶] . . . [¶] (3) . . . In an action to enforce arrears . . . a court shall apply the statute of limitation of the forum State or the State of the court that issued the order, whichever statute provides the longer period of limitation." (28 U.S.C.A. § 1738B(g).)

Under the original version of former Civil Code section 4384.5, a judgment for child support could be renewed like any other judgment. (Stats. 1986, ch. 1046, § 1, p. 3670.) In 1992 that statute was amended to provide that support orders were enforceable "until paid in full." (Stats. 1992, ch. 718, § 3.) That rule continues in the new Family Code. (Fam. Code, § 4502, added by Stats. 1993, ch. 219, § 143.)

As of the effective date of the 1992 enactment of former Civil Code section 4384.5 (Jan. 1, 1993, see Gov. Code, § 9600), all extant support judgments became enforceable "until paid in full" as far as California law was concerned.

Prior to 1993 support installments were enforceable (by execution) for 10 years. (Code Civ. Proc., § 683.020; *Leiden* v. *Hudson* (1979) 95 Cal.App.3d 72, 74-75 [156 Cal.Rptr. 849] ["a former wife is entitled to enforce her right of execution upon any installments of child support that have accrued within 10 years of the date of her application for a writ of execution"].) That period could be extended (*id.* pp. 74-75), but in this case no effort to do so was made.

But in California a judgment, even one not enforceable by execution, may be enforced by way of an action on the judgment, which must be filed within 10 years. (Code Civ. Proc., § 337.5; 8 Witkin, Cal. Procedure, *supra*, Enforcement of Judgment, § 396(d), p. 395 [rule applies in action to enforce registered foreign support order].) Such period of limitations is *tolled* while the defendant (judgment debtor) is outside of California. (Code Civ. Proc., § 351; *Green* v. *Zissis* (1992) 5 Cal.App.4th 1219, 1222 [7 Cal.Rptr.2d 406].) Bell does not explain why this tolling provision should not apply to him. (See *Kohan* v. *Cohan* (1988) 204 Cal.App.3d 915, 920-921 [251 Cal.Rptr. 570].)

The evidence shows the defendant, judgment debtor Bell was absent from this state for most, if not all, of the period in question. Specifically, Bell's own declaration under penalty of perjury avers that he was a resident of *Alaska* "for most of the years when the support became due" and "a resident of Montana (though I work in other states for several mos. at a time - even Ecuador for most a year) - until I moved to Anchorage, re-married and worked out of Anchorage, etc." His mother's declaration under penalty of perjury states, "During the years 1974 through '94 [Bell] was living and working in Alaska."

The earliest Montana "judgment" was in October 1970. Under California law Trend had 10 years in which she could have filed an action on that judgment. By October 1980, Bell was outside California and, hence, the statute of limitations was tolled. Before the limitations period ran, the new legislation changed the enforceability of the October 1970 "judgment" and all later judgments, by amending former Civil Code section 4384.5, effective January 1, 1993. Therefore, this case does not involve the "revivor" of barred claims; it merely allows Trend to use a different procedure to enforce the judgments. (See *Angeli* v. *Lischetti* (1962) 58 Cal.2d 474 [24 Cal.Rptr. 845, 374 P.2d 813].)

## III.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.

A petition for a rehearing was denied October 16, 1997, and appellant's petition for review by the Supreme Court was denied December 23, 1997. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1092.