[No. B158931. Second Dist., Div. Six. Aug. 12, 2003.]

In re Marriage of PHILIP and PATRICIA GARCIA.

PHILIP GARCIA, Respondent, v.
PATRICIA GARCIA, Appellant.

![black bar]

## Counsel

Fields, Israel & Binning and Albert S. Israel for Appellant.

Brachfield & Nakos, Susan Brachfield; Lascher & Lascher, Wendy C. Lascher; and Denise Abundis Brogna for Respondent.

## Opinion

**COFFEE, J.—**  Effective January 1, 2003, the Legislature amended Family Code section 4502 to eliminate the equitable defense of laches in actions brought by an individual to enforce a judgment for child, family or spousal support. We conclude that laches was previously a defense to an action for child support arrearages, and that the amendment does not apply to cases like the one before us, which were heard before the amendment's effective date. We further conclude the trial court did not abuse its discretion when it ruled that laches barred appellant Patricia Garcia (mother) from recovering child support arrearages from her former husband respondent Philip Garcia (father).

### BACKGROUND

Mother and father were married and have three children: Manuel, born in 1979, Nichole, born in 1982, and Vincent, born in 1983. The marriage dissolved in 1988 and father was ordered to pay child support to mother in an amount of $124.33 per month per child. Father was obligated to maintain health insurance for the children, and each parent was required to pay half of their uncovered medical expenses.

The children lived with mother from the time their parents separated until the summer of 1989, when they went to live with father. The two youngest children, Nichole and Vincent, moved back to mother's home in August of 1994. With the exception of an 11-month period spent with relatives in Texas and with father, Nichole remained in mother's home until July of 1998. She then moved to father's home. Vincent remained with mother until November of 2000, when he went to live with father.

Father did not pay mother any child support after the children came to live with him in 1989. Nor did he seek a modification of the support order to obtain money from mother while the children were in his care.

Mother contacted the Support Division of the Ventura County District Attorney's Office to seek assistance in collecting child support arrearages from father. On October 19, 2000, that office notified father by letter that it would be seeking a wage assignment. On December 11, 2000, the district attorney's office filed a statement for registration of California support order. Father filed a motion to vacate registration of the order, arguing, among other things, that the doctrine of laches barred mother's claim.

In his declaration supporting the motion to vacate, father stated that the children lived with him at least as much as they lived with mother, that mother earned more money than he had during the relevant period, that mother told him in 1994 she did not need any support from him, and that based on this representation, he did not seek a modification of the child support order to obtain support from mother for the time the children lived with him. Father estimated that if he had sought a modification of the support order, he would have been entitled to recover over $33,000 from mother. He also stated that he had paid all of the children's unreimbursed medical bills himself and had not received the one-half contribution from mother that he was owed.

The motion to vacate was initially denied without prejudice because father had also filed a motion to terminate child support and discharge arrearages in Los Angeles County Superior Court. The Los Angeles case was transferred to Ventura County, and an evidentiary hearing was held on October 31, 2001. Father testified to the same facts contained in his declaration. He further explained that he and mother had a verbal agreement that each of them would support the children in their care without seeking support from the other parent, and that due to this understanding, he had not set aside money to pay child support to mother. Mother testified that she never told father she did not need support and had actually started to file enforcement actions three or four times.

The court determined that under the existing support order, the total amount owing to mother was $24,998, including interest. This calculation did not include support payments for the periods when the children were in father's care. The court further ruled that due to mother's delay in seeking enforcement and the resulting prejudice to father, laches applied and father owed no money for past child support of his children, all three of whom were adults by the time of the hearing.

## DISCUSSION

■ Laches is an equitable defense to the enforcement of stale claims. The doctrine may be applied where the complaining party has unreasonably delayed in the enforcement of a right, causing prejudice to the other party and rendering the granting of relief inequitable. (*In re Marriage of Plescia* (1997) 59 Cal.App.4th 252, 256 [69 Cal.Rptr.2d 120].)

Mother argues that statutory changes in the early 1990's eliminated any laches defense that might have existed in actions to enforce child support orders. She reasons as follows: Prior to 1992, spousal and child support orders were enforceable as a matter of right within a specified statutory period, but could be periodically renewed, similar to other civil judgments. Earlier spousal support cases had recognized a laches defense, but concluded that it could not be applied to a claim for arrearages that was brought within the statutory enforcement period. (E.g., *Leiden v. Hudson* (1979) 95 Cal.App.3d 72, 74–75 [156 Cal.Rptr. 849].) Statutory law required the court to consider a party's diligence when awarding support outside the statutory enforcement period. (Civ. Code, former § 4384; Fam. Code, former § 291.) But in 1992 and 1993, the Legislature enacted legislation making all support orders enforceable at any time, eliminating the need to renew judgments awarding support and effectively eliminating the diligence defense in support of cases. (Former Civ. Code, § 4384.5, now Fam. Code, § 4502.)[1] Mother claims that when the Legislature made support orders enforceable in perpetuity, it eliminated laches as a possible defense. She contends it would be inconsistent to allow a laches defense in an action to enforce a support order when the 1992 and 1993 amendments had the affect of abrogating the statutory defense of diligence in such cases.

---

[1] Civil Code former section 4384.5 was enacted in 1992 and provided: "Notwithstanding any other provision of law, a judgment for child or spousal support, including a judgment for reimbursement or other arrearages, is exempt from any requirement that judgments be renewed. A judgment for child or spousal support, including all lawful interest and penalties computed thereon, is enforceable until paid in full." (Stats. 1992, ch. 718, § 3, pp. 3319–3320.)

This provision was moved from the Civil Code in 1993 and placed in Family Code section 4502, which then provided: "Notwithstanding any other provision of law, a judgment for child, family, or spousal support, including a judgment for reimbursement or other arrearages, is exempt from any requirement that judgments be renewed. A judgment for child, family, or spousal support, including all lawful interest and penalties computed thereon, is enforceable until paid in full." (Stats. 1993, ch. 219, § 143, p. 1650.) Similar language is now contained in Family Code section 4502, subdivision (a).

These arguments were rejected in *In re Marriage of Plescia, supra,* 59 Cal.App.4th at pages 256–261, which upheld a trial court ruling that a nine-year delay in seeking to enforce two years of past due spousal support, plus prejudice to the debtor-spouse, constituted laches. The court in *Plescia* explained: (1) laches was a traditional common law defense that could not be supplanted without a specific legislative directive; (2) because laches may be invoked even when the passage of time is less than the applicable limitations period, the indefinite extension of the period for enforcing a support order did not necessarily affect the availability of laches in an action to collect support arrearages; and (3) the statutory diligence defense was not identical to laches because it did not require a showing of prejudice to the debtor-spouse; thus, the abrogation of the diligence defense in actions to enforce support orders did not necessarily eliminate laches as a defense. (*Id.* at pp. 259–262.)

█ Other decisions have extended the reasoning of *Plescia* and concluded that laches is available as a defense to child support arrearages as well as spousal support arrearages. (*In re Dancy* (2000) 82 Cal.App.4th 1142, 1147–1160 [98 Cal.Rptr.2d 775]; *In re Marriage of Copeman* (2001) 90 Cal.App.4th 324, 328–333 [108 Cal.Rptr.2d 801]; *In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353, 1360–1364 [93 Cal.Rptr.2d 653].) Declining to draw a distinction between the "equitable" nature of the right to spousal support and the "legal" right to child support, one court observed: "We recognize that, unlike spousal support laws, which are considered a form of equitable relief ... child support is strictly a legal right. (Fam. Code, §§ 3585 & 3591, subds. (a) & (b), formerly Civ. Code, § 4811, subd. (a).) However, child support *proceedings* ... are equitable proceedings in which the trial court is permitted the broadest discretion in order to achieve fairness and equity. [Citations.] .... To this end, the trial court may consider whether there are equitable reasons for refusing to enforce a parent's support obligation in its entirety." (*Dancy, supra,* 82 Cal.App.4th at pp. 1148–1149, fn. omitted.)

Mother urges us to reject these authorities and instead follow *In re Marriage of Cordero* (2002) 95 Cal.App.4th 653 [115 Cal.Rptr.2d 787], which concluded in dicta that laches was not a defense to spousal support arrearages that had accrued within 10 years of the attempt to enforce the judgment. *Cordero* reasoned that before 1992, a spousal support order could be enforced by writ of execution at any time within 10 years and was not

subject to a laches defense within this 10-year period. In the early 1990's, the Legislature changed the law to make support orders enforceable at any time. This change was designed to make it easier for creditor-spouses to collect support, a purpose that would be thwarted if a debtor-spouse could assert a laches defense within the first 10 years of the judgment that would not have been available under former law. (*Id.* at pp. 660–663.)

In this case, mother initiated proceedings to enforce the child support judgment in 2000. Most of the arrearages she sought had accrued since 1990. Before the Legislature eliminated the period for enforcing support orders in 1992, child support orders were enforceable "by a writ of execution without prior court approval until five years after a child reaches the age of majority and, thereafter, for amounts that are not more than 10 years overdue on the date of the application therefore." (Civ. Code, former § 4383; Stats. 1987, ch. 960, § 1, repealed by Stats. 1992, ch. 162, § 3; see *In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 471 [94 Cal.Rptr.2d 156].) The arrearages in this case accrued within this period, and if we were to apply the reasoning of *In re Marriage of Cordero, supra,* 95 Cal.App.4th 653, laches would be unavailable to father as a defense as a matter of law.

We decline to follow *Cordero*. While it is undoubtedly true that the legislative changes of the early 1990's were intended to facilitate the collection of spousal and child support, this is not synonymous with an intent to make laches unavailable in cases where equity would be served by the application of that doctrine. And because the Legislature has eliminated the limitations period for enforcing support orders, there is no basis for barring a laches defense within a particular period. We agree with *Plescia* and its progeny that if the Legislature had intended to retain or establish a bright-line rule as to the earliest time that laches could be asserted, it would have done so explicitly. (See *In re Marriage of Fogarty & Rasbeary, supra,* 78 Cal.App.4th at p. 1363.)

Having concluded that laches was not eliminated when the Legislature indefinitely extended the period for enforcing support judgments, we consider the impact of a recent amendment to Family Code section 4502, effective January 1, 2003. The amendment added subdivision (c) of that section, which provides, "In an action to enforce a judgment for child, family, or spousal support, the defendant may raise, and the court may consider, the defense of

laches only with respect to any portion of the judgment owed to the state." Although this provision was not in effect at the time of the hearing on the child support arrearages in this case, mother argues that the amendment was a clarification of existing law and should be applied on appeal.

The success of mother's argument depends on whether the 2003 amendment was a change in or a clarification of existing law.    ■    Statutes which change the law do not apply retroactively unless the Legislature has clearly indicated otherwise. (*Phillips v. St. Mary Regional Medical Center* (2002) 96 Cal.App.4th 218, 229 [116 Cal.Rptr.2d 770].) But when a statute merely clarifies existing law, it "does not operate retrospectively even if applied to transactions predating its enactment.... Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].)

We conclude the addition of subdivision (c) to Family Code section 4502 effected a change in the law, rather than simply a clarification. Numerous documents in the legislative history of the amendment recognize that case law allowed a laches defense in actions to recover support arrearages. (E.g., Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) as amended July 2, 2000; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) for hearing on May 7, 2002; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) as amended June 19, 2002.) Nowhere in the legislative analyses are those cases criticized as an incorrect application of the then existing law. Rather, the laches defense is characterized as a "loophole" in the law that ought to be closed. This recognition of laches as an existing defense shows the Legislature intended to effect a change in the law when it enacted Family Code section 4502, subdivision (c).

Because the 2003 amendment to Family Code section 4502 was a change in the law, it could not be applied to cases heard before that date absent a clear indication that the Legislature intended the new law to be retroactive. There is nothing in the language of section 4502 or the legislative history of the 2003 amendment that would warrant a departure from the general rule that changes in the law operate prospectively. (See *Pacific Intermountain Express v. National Union Fire Ins. Co.* (1984) 151 Cal.App.3d 777, 781 [198

Cal.Rptr. 897].) Laches was a valid defense when mother sought to enforce the child support order and its availability is not affected by the 2003 amendment to section 4502.

We next consider whether the court properly applied laches under the facts of this case. ■ All intendments and presumptions are indulged in favor of the judgment, with conflicts in competing facts resolved in favor of the prevailing party. (*In re Marriage of Fogarty & Rasbeary, supra* 78 Cal.App.4th at p. 1365.) The court's ruling will not be disturbed on appeal unless there was an abuse of discretion. (*In re Marriage of Plescia, supra,* 59 Cal.App.4th at p. 257.)

There was no error under this deferential standard. Mother first sought enforcement of the child support order 12 years after its entry, and seven years after the children returned to her custody in 1994. While this delay was not as great as in some cases applying laches, the prejudice to father was significant. Viewed in the light most favorable to the judgment, father had custody of the children about as frequently as mother did. In 1994, mother told him she did not need any child support and the two of them agreed that each of them would pay for the children's expenses while they had custody. Based on this arrangement, father did not seek a modification of the support order to collect child support from mother while he had custody of the children, even though mother had an income comparable to his own. Father had spent a considerable amount on the children over the years, but did not put aside money to pay mother the support payments that she had previously declined.

When mother filed the enforcement action, two of the children had reached the age of majority. The youngest was almost 17 and had recently returned to live with father; he had turned 18 by the time of the evidentiary hearing on father's motion to vacate. ■ Although a parent may seek child support arrearages after the child has reached the age of majority, the equities are different in a case where the money to be obtained through enforcement of a support order will not necessarily be spent caring for the child. (See *In re Marriage of Copeman, supra,* 90 Cal.App.4th at pp. 332–333; *In re Marriage of Dancy, supra,* 82 Cal.App.4th at pp. 1156–1157.) This is especially true in a case like this one, where father did not shirk his obligations as a parent.

## DISPOSITION

The judgment is affirmed. Costs are awarded to father.

Gilbert, P. J., and Perren, J., concurred.